**FILED**

DEC 2 2 2014

~~signature~~ CLERK

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| SHERRY ERICKSON, | ) | Civ. # 14-5092 |
| | ) | |
| PLAINTIFF, | ) | |
| VS | ) | **COMPLAINT** |
| | ) | (Jury Trial Demanded) |
| NEW RUSHMORE RADIO, INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |

## JURISDICTION

(1)  This is an equal pay and age employment discrimination claim arising under Section 16(c) and 17 of the Fair Labor Standards Act of 1938 ("FLSA") as amended, 29 U.S.C.A. § 216(c) - 217, to enforce the requirements of the Equal Pay Act of 1963, codified as FLSA § 6(d), 29 U.S.C.A. § 206(d); pursuant to Section 706(f)1(0 and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A.§2000e 5(f)(1) and (3) and the Civil Rights Act of 1991, 42 U.S.C.A. § 1981a. This action is also authorized pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C.A. §§623(a)(1)-(2), 626(c) and 631(a).

(2)  Plaintiff Sherry Erickson ("Erickson") is an adult female resident who is over age 40 and resides in Pennington County, South Dakota.

(3) At all times relevant, Defendant New Rushmore Radio, Inc. ("New Rushmore Radio") is a subsidiary of Schurz Communications located in Pennington County, South Dakota.

(4)  New Rushmore Radio has continuously been an employer engaged in an industry affecting commerce and has continuously employed more than 20 employees engaged in commerce within the meaning of Title VII at 42 U.S.C.A. §§ 2000e(b) and (h), and of the ADEA at 29 U.S.C.A. § 630(b).

(5) New Rushmore Radio employed Ms. Erickson between October 2001 and September 4, 2013.

(6) Ms. Erickson suffered an adverse employment action when she was terminated after she refused to resign on September 4, 2013.

(7) Ms. Erickson timely filed a charge of discrimination with the EEOC alleging violations of Title VII and the ADEA.

(8) The EEOC issued Ms. Erickson a Notice of Suit Rights dated September 29, 2014.

(9) All conditions precedent to the institution of this lawsuit have been fulfilled.

(10) During her employment until at least September 2013, New Rushmore Radio engaged in unlawful employment practices at its Rapid City, South Dakota facility in violation of Title VII by not paying Erickson the same wages that it paid her male co-workers because of her gender.

(11) During her employment and until at least September 2013, New Rushmore Radio engaged in unlawful employment practices at its Rapid City, South Dakota facility in violation of the ADEA by treating Erickson differently in the terms and conditions of her employment because of her age.

(12) The effect of the practices complained of in Paragraph 10 above has been to deprive Ms. Erickson of equal employment opportunities and otherwise adversely affect her status as an employee because of her gender.

(13) The effect of the practices complained of in Paragraph 11 above has been to deprive Ms. Erickson of equal employment opportunities and otherwise adversely affect her status as an employee because of her age.

(14) The unlawful employment practices complained of in Paragraphs 10 and 11 above were intentional.

(15) The unlawful employment practices complained of in Paragraphs 10 and 11 above were done with reckless indifference to Ms. Erickson's federally protected rights.

(16) Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(4). Venue is proper in accordance with 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e 5(f)(3).

## COUNT ONE: EQUAL PAY ACT DISCRIMINATION

(17) Beginning in October 2001 and until September 4, 2013, Ms. Erickson worked for New Rushmore Radio as a Radio Sales Account Executive ("sales representative").

(18) Ms. Erickson had substantial experience in radio before she was hired at New Rushmore Radio.

(19) Ms. Erickson was a successful sales representative at New Rushmore Radio and considered the job as her career.

(20) Sales representatives at New Rushmore Radio are exempt employees who are required to work in excess of a 40 hour week because they often have to work nights and weekends for work-related events.

(21) Each of the nine (9) sales representatives at New Rushmore Radio worked on a salary plus commission; each of the sales representatives has a bi-weekly salary draw set and approved by New Rushmore Radio.

(22) Ms. Erickson's job duties were at least equivalent to her male co-worker's in skill, effort and responsibility and were performed under the same or similar work conditions.

(23) Ms. Erickson was not paid overtime for work done in excess of 40 hours a week.

(24) The station manager informed Ms. Erickson at the beginning of her employment that each sales representative was permitted to have a $2000 a month draw.

(25) Ms. Erickson was never informed that she could request a larger monthly draw.

(26) Ms. Erickson was informed that no sales representatives were paid overtime.

(27) Male sales representatives were informed that they could request a larger monthly draw and were paid a larger monthly draw than their female co-workers.

(28) To the best of Ms. Erickson's knowledge, male sales representatives were not required to pay back their draws if they left employment in a commission deficit.

(29) Male sales representative were assigned more lucrative sales accounts and were often reassigned to lucrative accounts that had been developed and then taken from female sales representatives.

4

(30) To the best of Ms. Erickson's knowledge, a male sales representative with no radio experience who was hired at the same time she was paid a larger monthly draw than Ms. Erickson.

(31) To the best of Ms. Erickson's knowledge, all of the New Rushmore male sales representatives who had equivalent job duties received a higher draw and wage than its female sales representatives.

(32) As a result of the acts complained of above, New Rushmore Radio unlawfully withheld the equal payment of wages due to Ms. Erickson.

(33) The unlawful pay practices complained of in Count One of this Complaint were willful, reckless and malicious.

## COUNT TWO:  AGE DISCRIMINATION

(34) During her twelve (12) years of employment with New Rushmore Radio, Ms. Erickson met her employer's reasonable performance expectations.

(35) Ms. Erickson was qualified to perform the necessary duties of her position.

(36) Beginning in 2007, Ms. Erickson was subjected to negative and demeaning comments about her age from the general manager, Lia Green, who is younger than Ms. Erickson.

(37) Ms. Green had ultimate supervisory authority over the terms and conditions of Ms. Erickson's employment; however Ms. Green was not Ms. Erickson's direct supervisor.

(38) In approximately 2011, Ms. Green discovered that Ms. Erickson was raising a family.  Thereafter Ms. Green repeatedly commented to Ms. Erickson and other New

Rushmore Radio employees about Ms. Erickson was a grandmother, and how Ms. Green did not understand how a woman Ms. Erickson's age could both work and raise children.

(39) Beginning in 2012 and at practically every meeting they had thereafter, Ms. Green asked Ms. Erickson when Ms. Erickson was going to retire. Ms. Erickson repeatedly told Ms. Green that she had no plans to retire.

(40) Between 2011 and 2013, Ms. Green made several remarks to Ms. Erickson about how many women Ms. Erickson's age did not like to shop.

(41) During a sales meeting with other sales representatives in approximately July or August 2012, Ms. Green called upon Ms. Erickson and asked Ms. Erickson how old she was. When Ms. Erickson answered, Ms. Green remarked that people Ms. Erickson's age do not use a computer as much as young people do.

(42) At a business meeting in April 2012, Ms. Erickson's direct supervisor told Ms. Erickson that the company appreciated her years of service but would prefer to have a younger, more energetic employee instead of Ms. Erickson.

(43) New Rushmore Radio re-assigned clients that Ms. Erickson had developed and assigned them to younger sales represenatives. Ms. Erickson repeatedly complained about these income-affecting reassignments.

(44) Ms. Green was aware of the fact that her remarks about Ms. Erickson's age were offensive and upsetting to Ms. Erickson.

(45) In 2013, Ms. Green began applying different attendance requirements and conditions of employment to Ms. Erickson than she applied to other sales representatives.

(46) During the spring and summer of 2013, Ms. Green hollered at, threw things at, swore at and publicly berated Ms. Erickson in the presence of other employees and

customers of New Rushmore Radio.  No younger employee was subjected to this treatment from Ms. Green.

(47) All New Rushmore Radio sales representatives were exempt employees who were expected to work weekends, nights and irregular business hours in order to socialize and create business contacts and otherwise meet with clients at the clients' convenience.

(48) Younger sales representatives were allowed unscheduled breaks for coffee and lunches, client calls, service club events and meetings, social events, family events and sporting events during the regular workday.  Younger employees were also permitted to get manicures, attend hair appointments and doctor's appointments without prior approval or the supervision of Ms. Green.

(49) Ms. Erickson was paid less than younger sales representatives.

(50) Ms. Erickson's co-employees recognized that Ms. Green applied different rules to Ms. Erickson and sympathized with her when Ms. Green was not present.  When confronted why she treated Ms. Erickson worse, Ms. Green stated that she could not explain it.

(51) In August 2013, when Ms. Erickson formally complained about the harassing tone and the contradictory directives that Ms. Green gave her, Ms. Green began suggesting that Ms. Erickson was senile and had hearing problems.

(52) Beginning in late August 2013, Ms. Green determined that Ms. Erickson would not be permitted to leave the work premises without supervision and that Ms. Erickson would be tracked when she left the work premises during regular business hours. However, Ms. Green did not inform Ms. Erickson of this policy.

(53) Ms. Green was aware that Ms. Erickson regularly went to the YMCA and played in a tennis league as a means of developing a client base and that these were successful venues for generating New Rushmore Radio business for Ms. Erickson.

(54) On September 4, 2013, Ms. Erickson left the office to play tennis with potential clients in the morning because of the heat.

(55) Ms. Green did not ask for permission from her supervisor to leave for this purpose because it was not a violation of any policy that Ms. Erickson was aware of during more than a decade of employment for her to attend an event that generated client contacts.

(56) On September 4, 2013, Ms. Green arrived at Ms. Erickson's tennis match and demanded that Ms. Erickson to submit her resignation.

(57) When Ms. Erickson refused to submit her resignation, Ms. Green terminated her employment.

(58) To the best of Ms. Erickson's knowledge, New Rushmore Radio replaced Ms. Erickson with a younger male employee.

(59) Ms. Erickson was subject to different treatment, terms and conditions of employment because of her age and her station manager's preference for a younger sales representative.

(60) But for New Rushmore Radio's discriminatory treatment, Ms. Erickson intended to continue employment with New Rushmore Radio.

(61) As a result of New Rushmore Radio's discriminatory treatment, Ms. Erickson lost wages, benefits, incurred costs and related expenses as a result of being unemployed, and has suffered humiliation, anxiety and stress.

(62) The unlawful employment practices complained of in Count Two were willful, reckless and malicious.

## **PRAYER FOR RELIEF**

Plaintiff Sherry Erickson prays for judgment against Defendant New Rushmore Radio, Inc. as follows:

a.  For a trial by jury on the merits of her claims;

b.  For compensatory damages in such amount as the evidence at trial may show to make Ms. Erickson whole by providing appropriate back pay, liquidated damages as allowed by law and pre-judgment interest as a result of New Rushmore Radio's unlawful employment practices in amounts to be determined by the jury;

c.  For general damages in such amount as the evidence at trial may show to make Ms. Erickson whole by providing appropriate compensation for past and future losses arising from the pain, anxiety, humiliation and embarrassment suffered by Ms. Erickson as a result of New Rushmore Radio's unlawful employment practices in amounts to be determined by the jury;

d.  For punitive damages in such an amount as the evidence at trial may show in amounts to be determined by the jury; and

e.  For her costs and disbursements incurred herein, including reasonable attorney fees, and for such other and further relief as the Court may deem just.

Dated this 18th day of December, 2014.

JOHNSON POCHOP & BARLTING

9

Stephanie E. Pochop
Kelsea Sutton
P.O. Box 149
Gregory, SD 57533
(605) 835-8391
Johnson@gwtc.net
Attorneys for Plaintiff Sherry Erickson